441 S.E.2d 399

**Steven A. JOHNSON, Petitioner Below, Appellee,**

**v.**

**Art ASHLEY, Sheriff; James C. Peterson, Robert Jacobs and Kenneth Blake, Commissioners, Kanawha County Deputy Sheriff's Civil Service Commission, Respondents Below,**

**Art Ashley, Sheriff, Appellant.**

**No. 21969.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 25, 1994.

Decided Feb. 18, 1994.

Michael T. Clifford, Clifford, Mann & Swisher, Charleston, for appellee.

Phillip D. Gaujot, Charleston, for appellant.

PER CURIAM:

This appeal is from an order of the Circuit Court of Kanawha County, dated June 15, 1993, which reversed a ruling of the Kanawha County Deputy Sheriff's Civil Service Commission (Commission). The circuit court found that the Commission was clearly wrong in upholding the termination of Deputy Steven A. Johnson of the Kanawha County

Sheriff's Department (Department), for off-duty misconduct. Sheriff Art Ashley contends that he had good cause for firing Deputy Johnson and that substantial evidence supports the decision of the Commission. We agree, and we reverse the judgment of the circuit court.

I.

The facts of this case are largely undisputed. Deputy Johnson was involved in an extramarital affair with Sherry Atha that lasted a few months. His wife found out about the affair, and, on March 16, 1989, she went to see Ms. Atha in Boone County. Mrs. Johnson asked Ms. Atha to follow her back to the Johnson home to confront Deputy Johnson.

Deputy Johnson arrived at the home to find the two women standing in the yard. Mrs. Johnson confronted him about the affair. He told her that the affair was over and asked Ms. Atha to leave them alone. When she did not leave, Deputy Johnson lost control. He became verbally abusive to the women. Mrs. Johnson took refuge in the family truck. Ms. Atha got into her car. Deputy Johnson smashed the window out of the truck with his fists and told his wife to get into the house. Mrs. Johnson called a relative who then contacted 9–1–1 for help.

Deputy Johnson then proceeded to kick and hit Ms. Atha's car. He jumped on the hood of the car and smashed the windows out.[1] He pulled Ms. Atha from her car through the driver's side door window. Deputy Johnson then attacked Ms. Atha. He beat her with his fists, choked and kicked her.[2]

The Department dispatched two deputies to the Johnson home to investigate. Deputy Johnson was called in to the Department later that same day to give his side of the story. He told Chief Deputy Larry Herald and Lieutenant Duane E. Drennan that he broke off the affair with Ms. Atha, but she had been harassing him and his family.

On March 17, 1989, Deputy Johnson was suspended with pay. An internal investigation of the incident was conducted. Deputy Johnson was evaluated by Dr. Ralph Smith, a psychiatrist. Dr. Smith tendered a report on April 7, 1989. After receiving information from Deputy Johnson's personnel file, Dr. Smith revised his evaluation by report dated May 15, 1989. The report states, in part:

"The review of the 201 file paints a somewhat different picture of Deputy Johnson than I obtained from the single interview and review of the investigation of the March 1989 incident. He now emerges as a man who over the last decade has had difficulty controlling his temper in a variety of contexts, whose problems in his domestic life have spilled over into multiple episodes requiring internal affairs investigations. . . .

"With the clear knowledge of Deputy Johnson's previous violent episodes and his inability to contain them, his lack of judgment in not seeking any help for obvious problems he has had for a decade and his poor response to internal affairs, Captain Marcum and the Chief's counseling and the disciplinary measures taken against him, it is now my opinion that Deputy Johnson is at a moderate to high risk for having continued problems. My prediction is that if he is retained as a deputy sheriff, ten years hence his 201 file will be twice as thick and the Department will have committed thousands of dollars more and the use of scarce resources to investigate future incidents[.]"

The Kanawha County Sheriff's Department Evaluation Board unanimously recommended that Deputy Johnson be terminated. By Special Order Number 4, dated July 12, 1989, Deputy Johnson was advised that his employment was being terminated on the grounds that on March 16, 1989, he violated West Virginia law and department rules and regulations. The four-page document details the various laws and regulations which were violated by Deputy Johnson. He requested a hearing before the Commission pursuant to W.Va.Code, 7–14–17 (1981).

---

1. The damage to Ms. Atha's car was approximately $2,700.

2. Battery charges were filed against Deputy Johnson. Ms. Atha subsequently had the charges dismissed.

A hearing was conducted on October 3, 1990. On November 16, 1990, the Commission issued its findings concluding that Deputy Johnson's "conduct on March 16, 1989, to be of such a violent and outrageous character to amount to misconduct of a substantial nature directly affecting the rights and interests of the public and to be damaging to the rights and interests of the public." Accordingly, the Commission ruled that there was just cause for Deputy Johnson's dismissal.

Deputy Johnson appealed this ruling to the circuit court. By order dated June 15, 1993, the circuit court ruled that the Commission's findings were clearly wrong and should be reversed. The circuit court found that an isolated incident of aggression did not constitute "misconduct of a substantial nature directly affecting the rights and interests of the public" as required by W.Va.Code, 7–14–17. The court disapproved of the way the matter was investigated by the Department and found that the Department should have provided counseling to Deputy Johnson. The circuit court held that a thirty-day suspension was sufficient punishment and ordered Deputy Johnson reinstated. The case was remanded back to the Commission with directions to calculate back pay. He also was awarded attorney's fees and court costs. It is from this order that Sheriff Ashley now appeals.

## II.

 The standard of review applicable in this case is set forth in Syllabus Point 1 of *State ex rel. Ashley v. Civil Service Commission for Deputy Sheriffs of Kanawha Co.,* 183 W.Va. 364, 395 S.E.2d 787 (1990):

" 'A final order of a police civil service commission based upon a finding of fact will not be reversed by a circuit court upon appeal unless it is clearly wrong or is based upon a mistake of law.' Syllabus point 1, *Appeal of Prezkop,* 154 W.Va. 759, 179 S.E.2d 331 (1971)."

This standard was articulated in the context of the municipal police officers' civil service system, but is also equally applicable to cases arising under the deputy sheriffs' civil service system. *See Mangum v. Lambert,* 183 W.Va. 184, 394 S.E.2d 879 (1990); *Roberts v. Greiner,* 182 W.Va. 137, 386 S.E.2d 504 (1989); *McDonald v. Young,* 173 W.Va. 168, 313 S.E.2d 445 (1984); *Kendrick v. Johnson,* 167 W.Va. 269, 279 S.E.2d 646 (1981).

 The principal issue on appeal is whether the circuit court erred in ruling that the Commission's final order was clearly wrong.[3] Syllabus Point 2 of *State ex rel. Ashley v. Civil Service Commission for Deputy Sheriffs of Kanawha Co., supra,* states:

" 'W.Va.Code, 7–14–17 (1981), requires that dismissal of a deputy sheriff covered by civil service be for just cause, which means misconduct of a substantial nature directly affecting the rights and interests of the public, rather than upon trivial or inconsequential matters, or mere technical violations of statute or official duty without a wrongful intention.' Syllabus point 2, *Mangum v. Lambert,* [183] W.Va. [184], 394 S.E.2d 879 (1990)."

 The circuit court erred in overruling the Commission. The record contains substantial evidence supporting Deputy Johnson's termination. First of all, Deputy Johnson's violent behavior on March 16, 1989, was so outrageous that, standing alone, it was sufficient to warrant termination. It is incredible that the circuit court found that "under the circumstances and in light of the duration of Atha's actions, Deputy Johnson exhibited a great deal of restraint over his anger and possibly more than may have been

---

**3.** Deputy Johnson also asserts that his due process rights were violated when he was not given a pretermination hearing. The issue was not raised before the Commission nor in the petition for appeal before the circuit court. He first raised the issue in his brief before the circuit court. However, after finding that the Commission's ruling was clearly wrong, the court did not address the issue.

We find that the Department conducted a constitutionally adequate pretermination hearing.

Deputy Johnson was called into the office and apprised of the complaint against him. He was given an opportunity to respond prior to his termination. Also, post-termination procedures were provided pursuant to W.Va.Code, 7–14–17. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Swiger v. Civil Service Comm'r,* 179 W.Va. 133, 365 S.E.2d 797 (1987).

expected of a reasonable person under the same or similar circumstances." Deputy Johnson's actions were anything but reasonable. His behavior raises serious questions about his ability to act rationally and appropriately when called upon to handle any number of stressful situations confronted by deputies.

It also is clear that this conduct was not an isolated incident of domestic violence as characterized by the circuit court. The Department conducted a similar investigation of Deputy Johnson in March of 1983 after receiving a complaint from his former wife. He apparently beat her and then grabbed her by the hair and hit her head against the wall so hard that it broke the wall boards. She had to be treated at the hospital for contusions.

Secondly, it was appropriate for the Department to vigorously investigate this incident. Deputy Johnson contends that the Department furnished the additional information to Dr. Smith in an effort to prejudice him. Although the information in the personnel file was negative, it had to be considered to give an accurate portrayal of Deputy Johnson's personality. Dr. Smith stated in his May 15, 1989 report:

"It is apparent that Deputy Johnson was less than completely candid with me during my examination of him 3/29/89 in that he told me he had only been arrested once for the kidnapping in Fayette County ten years previously and that the charges had been dropped. He did not mention these other incidents, which may not have technically resulted in arrest, but official orders were written up in Magistrate Court regarding his behavior."

It appears that any failure to provide the complete personnel file to Dr. Smith prior to his interview with Deputy Johnson was due to poor recordkeeping. When these items were later discovered by the Department, they were necessarily submitted to Dr. Smith to enable him to file a thorough report.

Finally, we agree with the Commission that it was not necessary to offer counseling programs to Deputy Johnson in lieu of terminating his employment. After reviewing the information gathered during the investigation of the incident, the psychiatric report submitted by Dr. Smith, and Deputy Johnson's personnel file, the Department made the more prudent and responsible decision to terminate Deputy Johnson.

For the reasons stated herein, we conclude that the circuit court erred in reversing the order of the Commission. The judgment of the Circuit Court of Kanawha County is, therefore, reversed.

Reversed.